**Edgar F. WILLIAMS, Jr., et al., Plaintiffs,**

v.

**James G. LEDBETTER, et al., Defendants.**

Civ. A. No. 86–194–2–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

May 9, 1988.

G.L. Dickens, Jr., Milledgeville, Ga., for plaintiffs.

Gordon Alphonso, Atlanta, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

Previously, this court found that the civil action brought by Mr. Williams in the Superior Court of Baldwin County against various officials of the State of Georgia impermissably interfered with this court's ability to provide full relief to plaintiff class members in *Kennedy v. Crittenden. See* order of this court dated March 8, 1988. Because of this fact, the court enjoined the Superior Court of Baldwin County from taking any further action in this matter. *Id.* The court further stated that it would give immediate attention to the question of whether the relief sought by Mr. Williams in both this court and the enjoined state court action was available given the effect of the decision in *Kennedy v. Crittenden.* The parties have submitted all of the material they consider relevant to this question, and, therefore, the court is now prepared to render its decision.

### Relevant Facts

Plaintiff Edgar F. Williams, Jr. is a white male employed by the Department of Human Resources at Central State Hospital in Baldwin County, Georgia as a Senior Social Worker. Mr. Williams' grievance arose when the Georgia Merit System, pursuant to a 1984 reclassification study done by the State, had re-evaluated Mr. Williams' employment position and recommended that his classification be upgraded to a higher pay status. Before this recommendation could be implemented, however, plaintiffs' counsel in *Kennedy* raised numerous concerns about the adverse racial impact such proposal would have on black employees at Central State Hospital. The State eventually conceded that the 1984 reclassification study was flawed and voluntarily with-

drew it from consideration. *See* letter addressed to court from the State dated May 14, 1987. Plaintiff Williams now contends that, as a result of this 1984 reclassification proposal, he has a vested right to the proposed upgrade in his employment status.

### Discussion

There are two issues, then, that the court must decide. First, the court must resolve the issue of whether Mr. Williams enjoys any property rights under the State Merit System Act, O.C.G.A. § 45–20–1 to 45–20–71 (1982 & Supp.), by reason of the aborted 1984 reclassification proposal. Secondly, if such a vested property right does, in fact, exist, then does the Supremacy Clause of the United States Constitution vitiate those rights. As to the first issue, Mr. Williams asserts that the Georgia law pertaining to its State Merit System supports his claim that employees whose positions were recommended for reclassification at Central State Hospital now have a vested right to that reclassification. Mr. Williams contends that absent such a right, the purpose of the State Merit System, as expressed in O.C.G.A. § 45–20–1, would be defeated.

Under Georgia law, it is true that personnel of the State have certain rights conferred upon them by the Merit System, as set out in O.C.G.A. § 45–20–1 to 45–20–71. Mr. Williams directs this court's attention to the language in the preamble of the Act, O.C.G.A. § 45–20–1,[1] to support his contention that he has a vested property right in the recommendation of reclassification. After a thorough review of this section, the court simply does not find any language supporting Mr. Williams' contentions that the inadequate reclassification proposal in question is binding upon the State. In fact, O.C.G.A. § 45–20–8(b) provides that, "this article is not intended to create a property interest in the job, but rather to create only a procedure under which permanent status employees can be dismissed or otherwise adversely affected." Even if the preamble contained language favorable to Mr. Williams' position, under Georgia law the preamble or purpose of the Act cannot control the direct language of the Act, rather, it can only be looked to for guidance when the body of the Act itself is ambiguous or otherwise obscure. *See*

---

1. O.C.G.A. § 45–20–1 provides:

(a) It is the purpose of this article to establish in the state a system of personnel administration based on merit principles and scientific methods governing the classification of positions and the employment, conduct, movement, and separation of public officers and employees. It is also the purpose of this article to build a career service in government which will attract, select, and retain the best employees on merit, free from coercive political influences, with incentives in the form of equal opportunities for promotions in the service, which will eliminate unnecessary and inefficient employees and which will provide technically competent and loyal personnel to render impartial service to the public at all times and to render such service according to the dictates of ethics and morality.

(b) In order to achieve these purposes, it is the policy of the state that the merit system established by this article be applied and administered in accordance with the following principles:

(1) Equal opportunity for all regardless of race, color, sex, age, national origin, physical handicap, or political or religious opinions or affiliations. No person shall be discriminated against in any case because of any physical handicap in examination, appointment, reinstatement, reemployment, promotion, transfer, demotion, or removal with respect to any position the duties of which, in the opinion of the commissioner of personnel administration may be efficiently performed by a person with such a physical handicap, provided that the employment will not be hazardous to the appointee or endanger the health or safety of his fellow employees or others;

(2) Impartial selection of the best qualified person for government service by means of competitive tests which are fair, objective, practical, and predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the position or positions for which such persons are being evaluated;

(3) Equal opportunity for competent employees to be promoted within the service;

(4) Reasonable job security for the competent employee including the right of appeal from adverse personnel actions;

(5) Systematic classification of all positions through adequate job evaluation; and

(6) Proper balance in employer-employee relations to achieve a well-trained, productive, and happy working force.

(c) The rules of statutory construction contained in Chapter 3 of Title 1, relating to general provisions concerning the construction of statutes, as now or hereafter amended, shall apply to this article.

*Chambers Lumber Co. v. Martin,* 112 Ga. App. 826, 146 S.E.2d 529 (1965). Finally, the preamble itself states that "... it is the policy of the state that the merit system established by this article be applied and administered in accordance with the following principles: (1) Equal opportunity for all regardless of race, color, sex, age, national origin, physical handicap, or political or religious opinions or affiliations." *See* O.C. G.A. § 45–20–1. It further provides that, "... (5) Systematic classification of all positions through *adequate* job evaluation" is required under the Merit System. *Id.* (emphasis added). In this case it is clear that the 1984 recommendations were flawed in that they did not provide an equal opportunity for all without regard to race at Central State Hospital. The State also admitted that the recommendation was not based upon sufficient analysis, that the study was inadequate, and that, therefore, a more comprehensive study was required. Under these facts, the court does not see how Mr. Williams is entitled to claim that this 1984 study created any type of vested right to the proposals contained in the recommendation.

At best, the Merit Act gives Mr. Williams the right to have his employment status evaluated fairly, and that if a promotion is in order, he should be given that promotion. While Mr. Williams may be justified in arguing that he deserves to be promoted, due to the *Kennedy* action, his potential entitlement to a promotion must be delayed until such time as the State can develop a promotional scheme that does not unfairly impinge upon the rights of the *Kennedy* class members. To not do so would violate the Merit Act's own provisions requiring equal opportunity for all. Accordingly, the court finds that Mr. Williams has not demonstrated any entitlement to the job recommendation contained in the 1984 reclassification proposal, and, therefore, his claim seeking that promotion is without merit.

A second and independent reason why this court cannot grant the relief sought by Mr. Williams is the fact that this court must be able to insure that the *Kennedy* class members will receive the full relief that they are entitled to under the Constitution, namely, the right to be made whole from the past effects of the State's discrimination. If this court were to allow Mr. Williams, and others similarly named in the 1984 reclassification proposal, to be promoted in accordance with that proposal, this court's ability to grant the relief required under the Constitution could be hampered by a lack of positions available for promotional relief. Furthermore, counsel in the *Kennedy* case concede that the 1984 reclassification study is flawed and that it likely has an adverse racial impact. By adopting parts of this proposal, the State would, in effect, be allowing the past effects of discrimination to continue at Central State Hospital. Under these circumstances, the Supremacy Clause of the United States Constitution prohibits the State from implementing the 1984 reclassification proposal, and thus, Mr. Williams cannot rely upon the reclassification proposal recommendations for promotional relief. *See San Francisco Police Officers' Association v. San Francisco,* 812 F.2d 1125, 1129–1130 (9th Cir.1987); and *Lawrence County v. Lead–Deadwood School District,* 469 U.S. 256, 260, 105 S.Ct. 695, 698, 83 L.Ed.2d 635 (1985). The State simply cannot be required by Mr. Williams to adopt such recommendations when the recommendations themselves conflict with this court's goal of developing relief for the plaintiff class in *Kennedy.* For the reasons stated, then, this court must find that plaintiff Williams does not have any vested property rights in the promotion recommended by the 1984 reclassification proposal, and that his complaint, as stated, does not demonstrate a claim upon which relief can be granted. It is, therefore, DISMISSED in its entirety with prejudice.